IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM W. WILLIAMS,

       Plaintiff,

vs.                                        No. 00cv1443 MV/JHG

JOANNE B. BARNHART,[1]
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

      This matter is before the Court on Plaintiff's (Williams') Motion to Reverse or Remand Administrative Decision, filed June 11, 2001. The Commissioner of Social Security issued a final decision denying Williams' application for disability insurance benefits. Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is well taken and recommends that it be GRANTED.

      Williams, now forty-four years old, filed his application for disability insurance benefits on December 29, 1997, alleging disability since August 19, 1997, due to degenerative lumbar disc disease and chronic low back pain. He has a ninth grade education and past relevant work as a gas station attendant, a store clerk, and a roustabout. The Commissioner denied Williams' application for disability insurance benefits both initially and on reconsideration. On September 28, 1999, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Williams

---

[1] On November 9, 2001, JoAnne B. Barnhart was sworn in as Commissioner of the Social Security Administration. Thus, she is substituted as Defendant in this action.

had severe impairments consisting of degenerative lumbar disc disease and chronic low back pain. Tr. 15. However, the ALJ found Williamss did not have any disorder or combination of disorders meeting or equaling in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. Moreover, the ALJ found that, although there was evidence of high blood pressure, nonetheless, there was no evidence of any end organ damage and no more than minimal limitations resulting from this condition. Therefore, the ALJ found Williams' high blood pressure did not constitute a severe impairment. *Id.* The ALJ also found Williams did not have a severe mental impairment. The ALJ opined that Williams exaggerated his symptoms and functional limitations and therefore found him not credible. Tr. 16. Finally, the ALJ found Williams could not return to his past relevant work but retained the residual functional capacity (RFC) to perform a full range of light work.[2] *Id*. Williams filed a Request for Review of the decision by the Appeals Council. On August 24, 2000, the Appeals Council denied Williams' request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Williams seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [claimant] must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse or remand, Williams makes the following arguments: (1) the ALJ erred in finding he did not have a severe mental impairment; (2) the ALJ erred in mechanically applying the Medical-Vocational Guidelines (the grids) despite his substantial

nonexertional impairments; and (3) the ALJ erred in finding he was capable of performing a full or wide range of light work.

Williams contends the ALJ's finding that his mental impairment is not severe is not supported by substantial evidence and is contrary to law. While Williams bears the burden of proving his disability, at step two his burden is "de minimis." At step two, a claimant is required only to make a "de minimis showing" that his medically determinable impairments, in combination, are severe enough to significantly limit his ability to perform work-related activity. *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental abilities to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered. *See* SSR 85-28, 1985 WL 56856, at *3, *4 (1985).

Under 20 C.F.R. §§ 404.1523, when assessing the severity of whatever impairments an individual may have, the adjudicator must assess the impact of the combination of those impairments on the person's ability to function, rather than assess separately the contribution of each impairment to the restriction of his or her activity as if each impairment existed alone. A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental abilities to perform basic work activities. 20 C.F.R. § 404.1521. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process. 20 C.F.R. §§ 404.1523.

Additionally, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p, 1996

4

WL 374184, at *4 (July 2, 1996). Although a not severe impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may be critical to the outcome of a claim when considered with limitations or restrictions due to other impairments. *Id.* In some instances, limitations due to a "not severe" impairment in combination with limitations imposed by an individual's other impairments, may prevent a claimant from performing past relevant work or may narrow the range of other work that the individual may still be able to do. *Id.*

Relying on a report by Mr. Rusty Marts, LPCC, the ALJ found at step two of the sequential evaluation process that Williams did not have a severe mental impairment. Mr. Marts assessed Williams on May 22, 1998 and found no signs of dysthymia or generalized anxiety disorder. Tr. 176. Williams also informed Mr. Marts that he did not feel he needed counseling. *Id.* A review of the record indicates Dr. Marianne Westbrook diagnosed Williams in 1995 with the following disorders: (1) dysthymia; (2) generalized anxiety disorder (provisional); (3) alcohol abuse; (4) reading disorder; (4) disorder of written expression; and personality disorder (dependent and avoidant features). Tr. 121-128. At that time, Dr. Westbrook recommended weekly individual and group counseling. Tr. 127. However, at his administrative hearing, Williams did not mention any problem with depression or anxiety. Additionally, Williams failed to report any mental problems on his March 23, 1998 Daily Activities Questionnaire. Tr. 95-98. At that time, Williams indicated he got along well with family, friends, and neighbors and had no problems going out in public. Tr. 96. Whatever mental or emotional problems Williams was experiencing in 1995, apparently they had improved to a degree that at the time of the administrative hearing Williams did not report them. Accordingly, the ALJ's finding that Williams

5

did not have a severe mental impairment is supported by substantial evidence.

Williams also contends the ALJ erred in mechanically applying the grids despite his substantial nonexertional impairments. Because the grids classify RFC based only on exertional or physical strength limitations, they may not be fully applicable to claimants with nonexertional impairments. See 20 C.F.R. 404.1567; *Channel v. Heckler,* 747 F.2d 577, 580-81 (10th Cir. 1984). Nonexertional impairments are medically determinable impairments, including pain, that do not directly limit physical exertion, but may reduce an individual's ability to perform gainful work nonetheless. *Id.* at 580.

If nonexertional impairments narrow the range of possible work the claimant can perform, the Secretary may only use the grids as a "framework" for determining whether, in light of all claimant's impairments, he has meaningful employment opportunity within the national economy. 20 C.F.R. pt. 404, subpt. P, App. 2, 200 (e) (2). In such cases, the Secretary must also produce a vocational expert to testify whether specific jobs appropriate to claimant's limitations exist in the national economy. *Channel*, 747 F.2d at 581.

Williams testified he suffered from "back pain that would not go away." Tr. 42. Williams also reported taking Lortabs, a narcotic analgesic, twice a day along with Motrin 800 three times a day to control his back pain. Tr. 42, 109. Moreover, Williams testified activity aggravated the pain (Tr. 54), the pain kept him from sleeping (Tr. 49), he could sit for only an hour due to the pain (Tr. 49), he could stand for an hour or two (Tr. 49), lifting a gallon of milk caused him back pain (Tr. 50), and he could not bend, kneel or squat (Tr. 49). Williams also testified he had to lie down during the day for at least an hour and sometimes three. Tr. 55. On March 5, 1998, Dr. Reeve noted a Functional Capacity Evaluation was performed. Tr. 209. The Functional Capacity

6

Evaluation indicated Williams was in a "light duty" category. *Id.* However, Dr. Reeve continued to prescribe Lortab for pain control as late as May 15, 1999. Tr. 221. On September 17, 1998, Dr. Reeve noted Williams "continues to have guarding and spasm." Tr. 206. On December 12, 1998, Dr. Reeve physical examination demonstrated back tenderness. Tr. 224. At that time, Dr. Reeve noted that Williams reported "ongoing pain" which was "aggravated with manipulation and movement." *Id.* The ALJ also referred to reports that Williams "was walking several miles at a time." Tr. 18. However, Williams testified he often had difficulty completing a mile due to back pain and had to take pain medication and lie down after he walked. Tr. 55.

"Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d at 1490-91. In light of the evidence supporting Williams complaints of significant pain, on remand, the ALJ should consult a vocational expert and reevaluate his RFC finding.

Finally, Williams reported he suffered from dizziness with Lortab. Dizziness is the most frequently reported adverse reaction to Lortab. *Physicians' Desk Reference* at 3163 (53 ed. 1999). In his decision, the ALJ found "[a]lthough [Williams] stated that he experiences constipation and dizziness as side effects from medication, there is nothing that would suggest that these side effects would significantly interfere with his ability to work." Tr. 17. The ALJ should have investigated the side effects of this medication before deciding it would enable Williams to work. *See Snead v. Callahan*, 129 F.3d 131, 1997 WL 687660 at **3 (10th Cir. Oct. 13, 1997)(unpublished disposition).

## RECOMMENDED DISPOSITION

The ALJ did not apply correct legal standards and his decision is not supported by substantial evidence. Williams' Motion to Reverse or Remand Administrative Decision, filed June 11, 2001, should be granted to allow the ALJ to consult with a vocational expert and reevaluate his RFC finding.

---

JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE</u>**

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.